### HOWARD v. SMITH et al.

Court of Appeals of Kentucky.

Feb. 27, 1953.

E. J. Picklesimer and Abner May, Pikeville, for appellant.

Burke & Burke, Pikeville, for appellees.

CULLEN, Commissioner.

Mrs. Stella Howard appeals from a judgment refusing cancellation of a deed by which she had conveyed a small farm to her niece and the latter's husband, who are the appellees Zettie and Charlie Smith.

Mrs. Howard, a widow 68 years of age, owned a farm of about 20 acres, on which there were two houses and a number of outbuildings. In April 1949, she conveyed it to the Smiths "for and in consideration of" the sum of $8,000, of which $7,000 in cash was paid at the time of the deed, and a one-year note for the remaining $1,000 was given. Mrs. Howard reserved for her lifetime the use and occupancy of the main dwelling house, the "canning house", a small chicken house, and the yard surrounding the main dwelling. The deed contained an agreement by which the Smiths were to "look after" Mrs. Howard, "wait upon her when she needs help or is unable to help herself," cook and serve her meals, and call a doctor for her when needed. However, Mrs. Howard agreed to pay the cost of her food, clothing and medical treatment. The agreement recited that "for said services waiting upon the said Stella Howard, she is to pay the said Charlie Smith and Zettie Smith the sum of $100.00 per year and it is further agreed that the said Charlie Smith and wife is to have all the furniture and household goods the said Stella Howard own or be possessed with at her decease except one feather bed."

After the execution of the deed, the Smiths, with their children, moved into the main house with Mrs. Howard, and everything went well for three months, until August 2, 1949, when the disagreement, so typical in cases of this kind, arose. Without attempting to detail the causes of dispute, it will be sufficient to say that the

Smiths moved out of the main house into the other house on the farm, and on Mrs. Howard's side we have a story of failure to receive the services bargained for, plus petty annoyances by the Smiths such as knocking over the outhouse and some bee stands, appropriating some lumber and hay belonging to Mrs. Howard, and "spying" on her activities; while on the Smiths' side we hear of Mrs. Howard's refusal to accept the services offered, her peculiar and irrational acts, and a flat denial by the Smiths of any of the annoyances complained of by Mrs. Howard.

Under her original petition in this action, Mrs. Howard sought a cancellation of that part of the deed embodying her agreement to pay the Smiths $100 per year, and leave them her household goods, in return for their services of care and attention. She did not seek a cancellation of the entire deed, but only of "the contract in said deed." Although her action was filed in September 1949, she further asked for recovery of the balance of $1,000 of the purchase price, which was not due until April 1950.

In an amended petition, Mrs. Howard asked for cancellation of the entire deed, and alleged that she "hereby tenders back" the purchase money paid to her. However, she at no time made an actual tender of the money, and on two occasions asked the court for an extension of time in which to make a tender, on the ground that she did not have the necessary amount on hand but expected to acquire it through the sale of some timber.

On April 17, 1950, while the action was pending, the Smiths paid to Mrs. Howard the balance of $1,000 due on the purchase price of the farm, and she accepted it and released of record the lien retained in the deed to secure that sum. The Smiths then filed an answer, denying all the allegations of the petition concerning a breach of the contract, affirmatively alleging their efforts to perform, and asserting that the acceptance of the payment of $1,000, on April 17, 1950, constituted a waiver of any right of Mrs. Howard to claim a breach of the contract.

The case was tried on depositions. In an effort to show that the agreement for care and personal services constituted a substantial part of the consideration for the conveyance of the farm, Mrs. Howard introduced the testimony of two witnesses that the farm was worth $21,000 at the time of the conveyance to the Smiths. On the other hand, several witnesses for the Smiths testified that the farm, at that time, was worth only $7,000 or $8,000, and there was evidence that Mrs. Howard had offered the farm for sale to others at a price of $7,000, before selling it to the Smiths.

We think that the court was fully justified in considering that the contract for care and personal services was a collateral agreement separable from the contract for sale of the farm, for the following reasons: First, because there was good evidence that the farm was not worth more than the price of $8,000 paid by the Smiths; second, because the deed itself makes it clear that the only consideration for the care and personal services was Mrs. Howard's agreement to pay the Smiths $100 per year and leave them her household goods at her death; and, third, because Mrs. Howard, by the allegations of her original petition, and by accepting the final payment of $1,000 after her action was commenced, recognized that the sale of the farm and the agreement for care and services were separable.

Mrs. Howard clearly was not entitled to a cancellation of the entire deed. Also, upon the evidence introduced, we think she was not entitled to a cancellation of the agreement for care and services, because the chancellor was warranted in believing that Mrs. Howard was unreasonably refusing to accept the care and services offered by the Smiths. Whether, in the future, there will continue to be a sufficient performance by the Smiths to entitle them to recover what the contract provides, for care and services, is a matter that could not be determined in the present action.

The judgment is affirmed.